1

2

3

4

5

6

# UNITED STATES DISTRICT COURT

7

EASTERN DISTRICT OF CALIFORNIA

8

| | | |
|---|---|---|
| CHARLOTTE ROSE, | ) | 1:06cv0067 AWI DLB |
| | ) | |
| | ) | |
| | ) | ORDER DENYING PLAINTIFF'S |
| Plaintiff, | ) | MOTION TO REMAND |
| | ) | |
| v. | ) | (Document 5) |
| | ) | |
| BEVERLY HEALTH AND | ) | |
| REHABILITATION SERVICES, INC., | ) | |
| et al., | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

9

10

11

12

13

14

15

16

17

18      Plaintiff Charlotte Rose ("Plaintiff") filed the instant motion to remand on February 9,

19 2006.  After numerous extensions of time, the matter was heard on July 7, 2006, before the

20 Honorable Dennis L. Beck, United States Magistrate Judge.  Daniel M. Kopfman appeared on

21 behalf of Plaintiff.  Charles Roesch appeared on behalf of Defendants Beverly Health and

22 Rehabilitation Services, Inc. ("Beverly"), Shawn McCullough and Dixie Tristan (collectively

23 "Defendants").

24                                              **BACKGROUND**

25      Plaintiff filed her employment discrimination action in the Fresno County Superior Court

26 on October 5, 2005, alleging causes of action for (1) disability discrimination under Cal. Gov.

27 Code section 12940(a); (2) retaliation under Cal. Gov. Code section 12940(f); (3) harassment

28 under Cal. Gov. Code section 12940(f); (4) breach of the employment contract; (5) breach of the

1

1  covenant of good faith and fear dealing under Cal. Gov. Code section 12940; and (6) wrongful

2  termination in violation of public policy.

3          Defendants were served with the complaint on October 11, 2005, and filed their answer

4  on December 5, 2005.

5          On January 19, 2006, Defendants filed their notice of removal.  Defendants explain that

6  on January 11, 2006, they discovered that Plaintiff was in the bargaining unit and that her

7  employment was covered by a collective bargaining agreement ("CBA") at all times relevant to

8  the action.  Defendants asserted that Plaintiff's state law breach of contract claim, which alleges

9  that Plaintiff could only be terminated upon just cause, is an allegation that Defendants violated

10  the just cause provision of the Agreement.  Defendants therefore base their removal on

11  preemption by Section 301 of the Labor-Management Relations Act ("LMRA").  Milne

12  Employees Ass'n v. Sun Carriers, Inc., 960 F.2d 1401, 1406 (9th Cir. 1991).

13          Plaintiff filed the instant motion to remand on February 9, 2006.

**FACTS**

15          According to the complaint, Plaintiff was employed as a Central Supply Clerk at the

16  Beverly Manor Convalescent Hospital from June 9, 1981, to January 27, 2005.  Shawn

17  McCullough was the Maintenance Supervisor and Dixie Tristan was a supervisor of Health Care

18  Services during Plaintiff's employment.  Sometime between 2003 and 2005, Plaintiff was

19  diagnosed with cardiomyopathy, which developed into congestive heart failure.  Her doctors

20  limited her to lifting no more than 30 pounds.  Plaintiff contends that Defendants refused to

21  accommodate her disability and subjected her to retaliation and harassment as a result of her

22  requests for accommodations.  For example, when Plaintiff asked for assistance, Defendant

23  McCullough referred to her several times as "the bitch that always needed help."  Defendant

24  Tristan slammed Plaintiff's arm in a door and called her a "fucking bitch."  Plaintiff alleges that

25  she was constructively terminated on January 27, 2005.

26

27

28

1                                    **DISCUSSION**

2        Plaintiff argues that remand is proper for two reasons: (1) Plaintiff was not a member of

3    the union at the time she was employed by Beverly and never paid any union dues, therefore

4    negating Defendants' claim of preemption; and (2) the notice of removal was untimely.

5    A.      Subject Matter Jurisdiction

6        State law claims alleging a breach of a CBA are completely preempted by Section 301 of

7    the LMRA.  29 U.S.C. § 185(a); Allis-Chalmers Corp v. Lueck, 471 U.S. 20 (1985).  Once "an

8    area of state law has been completely pre-empted, any claim purportedly based on that

9    pre-empted state law is considered, from its inception, a federal claim, and therefore arises under

10   federal law."  Milne Employees Ass'n v. Sun Carriers, 960 F.2d 1401, 1406 (9th Cir. 1991)

11   (citation omitted).  A plaintiff cannot avoid removal by "artfully pleading" only state law claims

12   that are actually preempted by federal statutes such as section 301.  Id.; see also Young v.

13   Anthony's Fish Grottos, Inc., 830 F.2d 993, 997 (9th Cir.1987).  Thus, if a state law claim is

14   completely preempted by a federal statute, the state law cause of action necessarily becomes a

15   federal one and can be removed.  Milne, 960 F.2d at 1406.

16       The parties do not dispute that the action would be properly removed if a CBA covered

17   Plaintiff's employment.  Rather, Plaintiff argues that her employment was *not* covered by a CBA

18   and therefore this Court lacks subject matter jurisdiction.  Specifically, Plaintiff contends that her

19   employment was not covered by a CBA because she was not a member of the union and did not

20   pay dues.  Declaration of Charlotte Rose, ¶¶ 5-6.  Plaintiff also points out that the Fourth Cause

21   of Action for breach of the employment contract does not allege a breach of a CBA, but instead

22   states that pursuant to Defendants' "oral, written, and implied personal policies and procedures

23   that were applicable to Plaintiff," Defendants needed just cause to terminate her employment.

24   Complaint, ¶ 46.

25       An employee does not have to be a dues-paying union member to be subject to a CBA,

26   but only needs to be a member of the collective bargaining unit covered by the CBA.  Steele v.

27   Louisville & N.R.R., 323 U.S. 192, 200 (1944) ("the labor organization chosen to be the

28   representative of the craft or class of employees is thus chosen to represent all of its members

                                              3

1    regardless of their affiliation or want of them"); Melanson v. United Air Lines, Inc., 931 F.2d

2    558, 561 n. 2 (9th Cir. 1991).  Defendants contend that as a service and maintenance employee,

3    Plaintiff was a member of the collective bargaining unit covered by the CBA.  Indeed, Plaintiff's

4    name is included on the list of employees in the bargaining unit who were eligible to participate

5    in the card check certification vote on or about October 8, 2003.  Declaration of Deborah J. Witt

6    ("Witt Dec."), Exhibit A.  This list was sent to the Union and the Federal Mediation &

7    Conciliation Services mediator prior to the October 8, 2003, card check certification.  Witt Dec.,

8    ¶ 3.  Plaintiff's name also appears on a list provided to the NLRB of the employees in the

9    bargaining unit for purposes of processing a June 2004, decertification petition.  Declaration of

10   Keith R. Jewell ("Jewell Dec."), ¶¶  3-4, Exhibit B.  Defendants provide a second list of

11   employees in the bargaining unit for purposes of processing a decertification petition, and

12   signatures of employees who indicated that they no longer wanted to be represented by Hospital

13   and Healthcare Workers, Local 250, SEIU, for purposes of collective bargaining and wanted to

14   end its authority as the representative of bargaining unit employees.  This list was also provided

15   to the NLRB.  Jewell Dec., ¶ 6, Exhibit C.  Plaintiff's name appears on both lists and her

16   signature appears on the decertification petition.

17         It is therefore evident from the documentation that Plaintiff was a member of the

18   collective bargaining unit covered by the CBA.  That she was not a member of the union and did

19   not pay dues is irrelevant.  Steele v. Louisville & N.R.R., 323 U.S. 192, 200 (1944).  In an

20   attempt to avoid this result, Plaintiff points to a section of the CBA that requires all covered

21   employees, "as a condition of employment, become and remain a member of the Union, paying

22   the periodic dues and initiation fees uniformly required . . ."  Plaintiff argues that since she was

23   not terminated for non-payment of dues, she could not have been covered by the CBA.  However,

24   Beverly's Regional Health Director Keri Wilson-Oviedo explains that union dues may not be

25   deducted from an employee's pay unless the Union obtains a signed release from the employee

26   authorizing the deduction.  Declaration of Keri Wilson-Oviedo ("Wilson-Oviedo Dec."), ¶ 4.

27   The CBA between HealthCare Workers Union, SEIU 250 and Defendant was ratified on or about

28   September 10, 2004, but the Union did not obtain a signed release from any of the employees in

4

1    the bargaining unit, including Plaintiff, prior to the date Plaintiff took unpaid leave on October

2    25, 2004.  Wilson-Oviedo Dec., ¶¶ 3, 5.  Plaintiff returned to work on January 17, 2005, and

3    ended her employment on January 27, 2005.  Wilson-Oviedo Dec., ¶¶ 6,7.  During these 11 days,

4    the Union did not obtain, or attempt to obtain, a signed authorization from Plaintiff.  Wilson-

5    Oviedo Dec., ¶ 8.

6           Insofar as Plaintiff contends her claims are not preempted because her complaint does not

7    allege a breach of the CBA, her argument fails.  Plaintiff argues that she alleges only a breach of

8    her individual employment contract.  However, as explained above, Plaintiff cannot avoid

9    removal by "artfully pleading" only state law claims that are actually preempted by section 301.

10   Milne, 960 F.2d at 1406.

11   B.     Timeliness

12          Next, Plaintiff argues that Defendants filed their notice of removal well beyond the 30

13   days provided for in 28 U.S.C. section 1446(b), which states that the notice must be filed "within

14   thirty days after receipt . . . of the initial pleading setting forth the claim of relief upon which

15   such action or proceeding is based. . ."  If the initial pleading does not set forth a removable

16   action, the notice may be filed "within thirty days after receipt . . .of a copy of an amended

17   pleading, motion, order or other paper from which it may first be ascertained that the case" is

18   removable.  28 U.S.C. § 1146(b).

19          Defendants filed their notice of removal on January 19, 2006, despite being served with

20   the complaint in October 2005.  They contend that they first discovered that Plaintiff was covered

21   by the CBA on January 11, 2006.  Plaintiff argues that Defendants did not need more than 30

22   days to make a determination as to whether the action was preempted, and, as Plaintiff's

23   employer, Beverly was at all times in possession of all facts necessary to determine whether

24   Plaintiff's complaint alleged a breach of the CBA.

25          In support of its timing, Defendants contend that Plaintiff's complaint did not, on its face,

26   state any facts supporting removal, and that they did not have a duty to look beyond the

27   complaint to ascertain whether Plaintiff's claim involved a federal question.  Defendants are

28

1   correct.  The Ninth Circuit recently decided the issue of when the thirty-day period begins to run,

2   explaining:

3          We now conclude that notice of removability under § 1446(b) is determined through
           examination of the four corners of the applicable pleadings, not through subjective
4          knowledge or a duty to make further inquiry. Thus, the first thirty-day requirement is
           triggered by defendant's receipt of an "initial pleading" that reveals a basis for removal. If
5          no ground for removal is evident in that pleading, the case is "not removable" at that
           stage. In such case, the notice of removal may be filed within thirty days after the
6          defendant receives "an amended pleading, motion, order or other paper" from which it
           can be ascertained from the face of the document that removal is proper.

7   Harris v. Bankers Life and Cas. Co., 425 F.3d 689, 695 (9th Cir. 2005).  The Ninth Circuit has

8
    since explained that after Harris "we no longer require defendants [to risk sanctions for
9
    premature removal]--we don't charge defendants with notice of removability until they've
10
    received a paper that gives them enough information to remove." Durham v. Lockheed Martin
11
    Corp., 445 F.3d 1247, 1251 (9th Cir. 2006); see also Riggs v. Continental Baking Co., 678
12
    F.Supp. 236, 238 (N.D.Cal.1988) (the elements for removability must be specifically indicated in
13
    official papers before the statutory period begins to run); Hudson v. Pinkerton Security Services,
14
    2004 WL 2075449, (N.D.Cal. 2004).  Therefore, the defendant does not have to speculate as to
15
    the facts that form the basis for removal jurisdiction.  Jong v. General Motors Corp., 359 F.Supp.
16
    223 (N.D.Cal.1973); Rico-Chinn v. Prudential Ins. Co. of America, 2005 WL 1632289 (N.D.Cal.
17
    2005) (statute permits the defendant to rely exclusively on the initial pleading for information
18
    bearing on removability).
19
           For example, in Riggs, an employee brought suit against a former employer, alleging only
20
    state law tort claims.  Plaintiff's complaint did not indicate that plaintiff was a member of a
21
    union or that the employment was covered by a CBA.  Defendant did not receive notice of these
22
    facts until plaintiff's deposition.  Holding that the deposition constituted an "other paper" under
23
    the statute, the court found the notice of removal timely because it was filed within thirty days of
24
    the deposition.
25
           Similarly, in Jong, the plaintiff filed a complaint in state court.  The complaint did not
26
    allege the citizenship of defendant.  Citing 28 U.S.C. § 1446(b), the court held that "the time
27
    period to remove an action cannot depend on defendant's actual knowledge, because the statute
28

1    expressly allows a defendant to rely on papers presented to it." Jong, 359 F.Supp. at 226.  The

2    defendant is therefore not required to speculate as to facts forming the basis for removal.  Id.  The

3    court held that removal was timely, more than eight months after diversity was created by the

4    dismissal of a party, because the defendant filed its removal petition within thirty days of

5    receiving official notice of that party's dismissal.  Id.

6         In Portley v Kaiser Found. Hospitals, 1983 WL 31122 (N.D.Cal. 1983), an employee filed

7    a state court action alleging that the employer violated the employment contract by discharging

8    the employee.  The complaint made no mention of the union, plaintiff's membership in the union,

9    or the CBA.  Defendants filed the notice of removal within 30 days of plaintiff's deposition,

10   where they learned for the first time that plaintiff was a member of a union.  Citing Jong, the

11   court found the notice timely, explaining that "even though defendants may have suspected or

12   even known of the ultimate removability of the case, they did not find out for certain that plaintiff

13   was a member of the union until plaintiff's deposition. . ." See also Kirkland v. Morton's of

14   Chicago, 1996 WL 532118 (N.D.Cal.,1996) (holding that where complaint established diversity

15   of citizenship but did not set forth the amount of damages, the notice of removal was timely

16   when filed 30 days after receiving plaintiff's statement of damages, even though defendant had

17   prior knowledge that the damages would exceed the required amount).

18        In a Florida District Court case, the plaintiff argued that the thirty day period began

19   running prior to defendant's receipt of her answers to interrogatories, which definitively

20   established the amount in controversy.  Del Rio v. Scottsdale Ins. Co., 2005 WL 3093434

21   (M.D.Fla. 2005).  Plaintiff argued that defendant had enough pre-suit evidence to determine that

22   the amount in controversy exceeded the jurisdictional requirement.  Citing Jong, the court held

23   that the defendant's actual knowledge did not start the time running, but rather the defendant is

24   entitled to rely on "papers" presented to it.

25        Defendants are therefore correct that they did not have a duty to look beyond the face of

26   the complaint to ascertain removability.  Indeed, Defendants can avoid the running of the thirty-

27   day time period even if they had suspected that Plaintiff was a member of the Union and her

28   employment was covered by the CBA.  Contrary to Plaintiff's argument, Defendants had no duty

1    to investigate whether the claims were preempted, even if Defendants were in possession of

2    documents that may have demonstrated preemption.

3            Recognizing that Defendants might prevail in this argument, Plaintiff further contends

4    that even if service of the complaint did not trigger the start of the thirty-day time period and

5    Defendants could rely on the discovery of facts to start the clock running, Defendants' December

6    6, 2005, e-mail showed that they knew Plaintiff's employment was covered by the CBA.  The e-

7    mail read:

8            During our investigation into Ms. Rose's allegations, we discovered yesterday that she
             was covered by a collective bargaining agreement at all times relevant to her claims.
9            Please confirm whether you dispute this.

10           Plaintiff essentially argues that the e-mail was an "other paper" that should have started

11   the time running.  Within the Ninth Circuit, the phrase "other paper" has been interpreted as

12   "documents generated within the state court litigation," see e.g., Smith v. International Harvester

13   Co., 621 F.Supp. 1005, 1009 (D.Nev.1985) (official Notice of Entry of Order of Dismissal

14   indicated removal was available), and the interpretation has been extended to include discovery

15   documents such as depositions.  Riggs, 678 F.Supp. a 238 ("elements of removability must be

16   specifically indicated in *official* papers before the statutory period begins to run.") (emphasis

17   added); Lillard v. Joint Medical Products, 1995 WL 20609 (N.D.Cal. 1995) (finding that "other

18   paper" did not include informal discovery).  In making these determinations, the courts apply the

19   principle of *ejusdem generis*, by which general words are construed to embrace only objects

20   similar in nature to those objects enumerated by the proceeding specific words.  Lillard, 1995

21   WL 20609; Interior Glass Services, Inc. v. Federal Deposit Ins. Corp., 691 F.Supp. 1255 (D.

22   Alaska 1988) (lawyer's letter was not deemed an "other paper").

23           In a Northern District of California case where the complaint was silent on the amount of

24   damages, plaintiff argued that defendant had in its possession documents that would have

25   allowed it to ascertain whether the amount of damages exceeded the jurisdictional amount and

26   that the thirty day period thus began to run on the date defendant was served with the complaint.

27   Rico-Chinn v. Prudential Ins. Co. of America, 2005 WL 1632289 (N.D.Cal. 2005).  As an

28   alternative, plaintiff argued that the defendant's documents constituted "other paper."  Noting

1  that the Ninth Circuit has not ruled on the definition of "other paper" or when the "other paper"

2  has to be received by defendant, the court agreed with the Fifth Circuit in finding that "other

3  paper" does not include documents in defendant's possession.  The court concluded that

4  defendant was "not in 'receipt' of an 'other paper' by reason of its possession of its own

5  records."

6      Applying the reasoning above, Defendants' December 6, 2005, e-mail does not constitute

7  an "other paper."  First, as informal discovery and a lawyer's letters have not been considered

8  "other papers," consistency requires that an e-mail between counsel not received "other paper"

9  status.  Second, as in Rico-Chinn, the thirty-day period for removal set forth in the second

10  paragraph of § 1446(b) commences only with the defendant's "receipt" of an "other paper," and

11  Defendants cannot "receive" their own e-mail.  Additionally, "it would appear contrary to the

12  purpose of § 1446(b) to require courts to conduct 'mini-trials' on the extent and significance of

13  the defendant's own records."  Rico-Chinn, at *3

14      Accordingly, as the Court has subject matter jurisdiction over Plaintiff's claims and

15  Defendants' notice of removal was timely, Plaintiff's motion to remand is DENIED.

16

17      IT IS SO ORDERED.

18    **Dated:    July 22, 2006**              **/s/ Dennis L. Beck**
   3b142a                                UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28