**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| **CHARLOTTE ROSE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**BEVERLY HEALTH AND REHABILITATION SERVICES, INC. dba BEVERLY MANOR and BEVERLY MANOR CONVALESCENT HOSPITAL, SHAWN McCULAH, DIXIE TRISTAN, and DOES 1 to 20, inclusive,**<br><br>**Defendants.** | ) | **CV F 06-0067 AWI DLB**<br><br>**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING DEFENDANTS MOTION TO STRIKE PLAINTIFF'S JURY DEMAND AS MOOT**<br><br>**Documents # 49 and # 48-1** |

This is an action for damages by plaintiff Charlotte Rose ("Plaintiff") against defendant Beverly Health and Rehabilitation Services, Inc., dba Beverly Manor and Beverly Manor Convalescent Hospital ("Beverly") and individual defendants Shawn McCollough[1] and Dixie Tristan (collectively, "Defendants"). In the present motion, Defendants move to dismiss the complaint in its entirety or, in the alternative for summary judgment, on the ground Plaintiff is judicially estopped from pursuing any claim that was pending at the time of her bankruptcy proceeding that was not declared as an asset of the bankruptcy estate.

---

[1] The magistrate judge's order of July 22, 2006, as well as Defendants' pleadings spell defendant's name "McCollough." The complaint, as well as Plaintiff's pleadings spell the name "McCulah." The court will adopt the spelling "McCollough" for the sake of consistency of court documents. The court apologizes for any misspelling.

Plaintiff has challenged the jurisdiction of this court through a motion for reconsideration of the magistrate judge's order denying remand to the state court. Plaintiff's motion for reconsideration is addressed in a separate order. Venue is proper in this court.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

As will be discussed *infra*, Defendants' motion is resolvable by reference only to the pleadings and to documents filed by Plaintiff in the course of her bankruptcy proceeding which may be judicially noticed. The court therefore need not convert the instant motion into a motion for summary judgment and may proceed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, accepting as true all allegations set forth in the complaint. Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976).

Plaintiff was an employee of Beverly, working as a central supply clerk in Beverly's convalescent hospital located in Fresno. Plaintiff worked for Beverly from June of 1981 until she was constructively discharged on January 27, 2005. Between 2003 and 2005 Plaintiff was diagnosed with a heart condition called cardiomyopathy, which developed into congestive heart failure. Plaintiff's congestive heart failure resulted in a reduction in Plaintiff's work capacity, including a limitation of her lifting capacity to 30 pounds. The complaint alleges that Plaintiff requested accommodation for her disability and received none. She further alleges she was subject to retaliation and harassment by Beverly and by the individual Defendants. Plaintiff alleges the retaliation and harassment created an intolerable work environment and that her discontinuation of employment with Beverly constituted constructive termination.

Plaintiff discontinued her employment with Beverly on January 27, 2005. On April 14, 2005 Plaintiff timely filed claims with the California Department of Fair Employment and Housing ("DFEH") alleging discrimination and violation of both federal and state guaranteed civil rights against Beverly and individual defendant Tristan. On April 19, 2005, DFEH issued notice of case closure and right to sue letters with respect to Plaintiff's

complaints against Beverly and Tristan. On or about September 15, 2005, Plaintiff filed a civil rights complaint with DEFH against individual Defendant McCollough. A notice of case closure and right to sue letter was issued as to individual Defendant McCollough on September 28, 2005.

The only facts not set forth in the complaint that are relevant to Defendants' motion to dismiss are generally uncontested facts contained in documents filed in Plaintiff's bankruptcy case. A district court may consider materials in a 12(b)(6) motion to dismiss that are not part of the pleadings but that are 'matters of public record' of which the court may take judicial notice pursuant to Federal Rule of Evidence 201. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). "Federal Rule of Evidence 201 allows a court to take judicial notice of facts that are not subject to reasonable dispute in that they are either (1) generally known within territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Biggs v. Capital Factors, Inc., 120 F.3d 268, 1997 WL 415340 at *1 (9th Cir. 1997). Plaintiff's bankruptcy case was filed in the Bankruptcy Court of the Eastern District of California, which is within this court's territorial jurisdiction. Where, as here, the fact at issue is the existence of a statement in a declaration within a bankruptcy proceeding, and not the truth of the statement itself, the accuracy of the fact at issue cannot be reasonably questioned. See id. (recognizing that judicial notice may not be appropriate where the truth of the matter judicially noticed is at issue). The court therefore grants Defendants' request for judicial notice of Plaintiff's bankruptcy proceeding generally, and grants judicial notice in particular of Plaintiff's responses to Schedules "A" and "B" filed in that proceeding. See Duke Energy Trading & Marketing, L.L.C. v. Davis, 267 F.3d 1042, 1048 n.1 (9th Cir. 2001) (granting judicial notice of filings made in related bankruptcy proceeding).

Plaintiff filed a voluntary Chapter 7 Bankruptcy Petition on May 27, 2005. On schedule "A" of the petition, which lists all real property assets belonging to the petitioner,

Plaintiff indicated there were no real property assets. Schedule "B" lists personal property assets. Specifically, at item 20, the petitioner is asked to describe "Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each." Doc. # 49, Exh. 2. Plaintiff indicated "none" in response to this question. Plaintiff did not otherwise indicate the existence of any claims against Defendants anywhere in the information filed in connection with her Chapter 7 Petition. Based on information submitted by Plaintiff and her husband in the course of the Bankruptcy proceeding, the bankruptcy court concluded there were no funds available from the estate for distribution to creditors. A Report of No Distribution was issued, and Plaintiff's debts were discharged on September 8, 2005.

The complaint in the instant case was filed in Fresno County Superior Court on October 5, 2005. Defendants filed notice of removal to this court on January 19, 2006. Plaintiff filed a motion to remand on February 9, 2006. The magistrate judge denied Plaintiff's motion to remand on July 22, 2006. Plaintiff moved for reconsideration of the magistrate judges order denying remand. Plaintiff's motion for reconsideration is under consideration and will be addressed in a separate order.

**LEGAL STANDARD**

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Balistreri v. Pacifica Police Department, 901 F.2d 696, 699 (9th Cir. 1990). A Rule 12(b)(6) dismissal can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.1984). In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740

(1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969). In deciding a Rule 12(b)(6) motion, courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.1981).

"As a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.' [Citation.]" Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). However, as previously noted a district court may consider materials in a 12(b)(6) motion to dismiss that are not part of the pleadings but that are 'matters of public record' of which the court may take judicial notice pursuant to Federal Rule of Evidence 201. Id. Specifically, a district court may take judicial notice of public records related to legal proceedings in both state courts and in the district court. See Miles v. State of California, 320 F.3d 986, 987 (9th Cir. 2003) (district court taking judicial notice of related state court proceedings).

**DISCUSSION**

Defendants' contend that Plaintiff may not maintain her action against Defendants because Plaintiff failed to list the action against Defendants on any submission to the bankruptcy court at any time during the bankruptcy proceeding up to the time the bankruptcy court discharged Plaintiff's debts. Defendants contend the doctrine of judicial estoppel prevents Plaintiff from asserting a claim against Defendants when she had made a prior representation to the bankruptcy court that there was no pending cause of action.

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by taking a clearly inconsistent position. [Citation.]" Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001) ("Hamilton").

> A court "may" consider three factors in determining whether to apply the doctrine of judicial estoppel: (1) "a party's later position must be clearly inconsistent with its earlier position;" (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial

> acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled;" and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

Froshiesar v. Babij, 2004 WL 2360529 at *4 (D.Ore. 2004) (quoting Hamilton, 270 F.3d at 783 (internal citations and quotations omitted).

Plaintiff asserts a number of arguments in opposition to Defendants' motion to dismiss. The first two of these require little discussion. Plaintiff first contends that Defendants cannot properly be considered as a motion to dismiss because it relies on facts that are not part of the pleadings; that is, the motion relies on facts contained in bankruptcy court filings. As previously discussed, the court may consider facts of which it may properly take judicial notice without converting a motion to dismiss into a motion for summary judgment. As noted, the court has determined that it may take judicial notice of filings in the bankruptcy court where Plaintiff's bankruptcy petition was filed, the court may consider those filings without converting Defendants' motion to a motion for summary judgment. Plaintiff's contention that Defendants' motion is procedurally improper is therefore rejected.

Plaintiff's second contention is that the court may not consider Defendants' motion to dismiss because the court lacks subject matter jurisdiction over the action. This contention is addressed in the court's memorandum opinion and order denying Plaintiff's motion for reconsideration of the magistrate judge's order denying remand, which is filed separately. The court rejects Plaintiff's contention that it lacks subject matter jurisdiction for the reasons set forth in its separately filed memorandum opinion and order. That discussion need not be repeated here.

Third, Plaintiff contends she did not misrepresent any facts to the court when she filed her bankruptcy petition and filed the related schedules. The basis of Plaintiff's contention in this regard is that she had no "claims" when she filled out schedules "A" and "B" because she had not yet filed the complaint in the instant case and because she had not yet obtained the

right to sue letter as to individual defendant McCollough. The DFEH claims against Beverly and individual Defendant Tristan were filed on April 14, 2005, and the right to sue letters were issued five days later. The DFEH complaint was filed as to McCollough on September 15, 2005. Plaintiff contends she did not make any misrepresentations to the bankruptcy court because she did not have a "claim" within the meaning of Question 20 until she filed the instant complaint. In the alternative, Plaintiff contends she did not make any misrepresentations with regard to individual defendant McCollough because she had no claim against McCollough within the meaning of question 20 until she received the right to sue letter with respect to McCollough on September 28, 2005, twenty days after her debts were discharged pursuant to her Chapter 7 petition on September 8, 2005. The issue Plaintiff presents, therefore, is whether she had "claims" she was obliged to report at the time she filed her Schedule "A" and "B" statements, or during the pendency of the bankruptcy proceeding.

Hamilton specifically applied the doctrine of judicial estoppel in the context of a party's attempt to maintain an action against an insurance company based on a claim that accrued prior to the filing of a bankruptcy petition and where the claim was not listed as an asset of the bankruptcy estate. The Hamilton court noted that "[i]n the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements. [Citation.]" Hamilton, 270 F.3d at 783.

In Hamilton, the plaintiff filed an insurance claim with defendant insurance company for alleged losses resulting from water damage. Id. At 780. During the pendency of the insurance claim, but before any complaint was filed in court, plaintiff filled a petition for Chapter 7 Bankruptcy. The plaintiff in Hamilton received notice of rejection of his insurance claim on November 3, and filed his bankruptcy schedules on November 14. He did not advise the bankruptcy court of any potential claim against the insurance company. Id. at 781. The plaintiff in Hamilton filed his complaint in court against the insurance company about

three months after his bankruptcy petition was dismissed.

In Hamilton, a case that also involved a Chapter 7 bankruptcy petition, the court noted the obligation of the bankruptcy petitioner to list all assets on his bankruptcy schedules, including any "pending" claims that may exist at the time of the filing of the petition or during the pendency of the bankruptcy. See id. at 784 (11 U.S.C. § requires petitioner to list assets and liabilities and creates a duty to amend submitted schedules to provide notice of claims acquired since filing). Since the court in Hamilton found the plaintiff in that case had a duty to report as bankruptcy assets claims that he had not filed as of the time the bankruptcy proceeding was dismissed, this court must conclude that a "pending" claim, as that term is used in Hamilton, includes claims that have accrued as of the time of the bankruptcy filing regardless of whether they have been set forth in a complaint.

This viewpoint is reinforced by the Hamilton court's reliance on, and approval of, their prior opinion in Hay v. First Interstate Bank of Kalispell, 978 F.2d 555 (9th Cir. 1992) ("Hay"). In Hay, the court applied judicial estoppel to bar the claims of a bankrupt plaintiff against a defendant bank where the plaintiff had "learned of the facts that led to the discovery of [plaintiff's] claims" during the pendency of the bankruptcy proceedings and prior to the close of the bankruptcy case. Id. at 557. In Hay, the court noted with approval the district court's decision in Monroe County Oil v. Amoco Oil Co., 75 B.R. 158, 162 (S.D. Ind. 1987), which held the debtor has a duty to disclose "any litigation that is *likely to arise* in a nonbankruptcy context." Id. (italics added).

Based on the case law reviewed, the court concludes Plaintiff in this case had a duty to disclose to the bankruptcy court any potential claims she may have had against Defendants, including both the claims against Beverly and Tristan, for which right to sue letters had been issued, and the claims against McCollough, where the right to sue letter had not yet been issued but where the claim that was later asserted had already accrued and the facts upon which that claim would be based were known. Hamilton, Hay, and Monroe County Oil make

it clear that the duty of the bankruptcy petitioner to disclose the existence of a potential claim is not a formalistic duty predicated on the procedural status of a claim, but is a duty of candor that accrues from the time the facts that give rise to the potential claim are known. Hay, 978 F.2d at 557. It is also clear from the discussion in the above cited cases that the subjective intent of the bankruptcy petitioner at the time of the bankruptcy filing to pursue or not pursue the claims is not relevant. The duty of the bankruptcy petitioner is to disclose all actual and potential assets of the bankruptcy estate, not just those assets the petitioner may subjectively chose to pursue.

The crux of Plaintiff's argument appears to be that she did not mislead the bankruptcy court because she did not have any "claims" to list at question 20 on Schedule "B." Apparently, Plaintiff's contention is that a "claim" does not exist until it is filed or in some other way formalized or acted upon. Plaintiff presents no support for this hyper-technical interpretation of the word "claim," an interpretation that runs directly contrary to the way that term is used in each of the cases cited above. Pursuant to Hay, the court finds the term "claim" incorporates any potential cause of action that has accrued and whose facts are sufficiently well known to the Plaintiff to indicate the existence of a potential asset. Hay, 978 F.2d at 557. Nothing in the cases examined supports the notion that a "claim" need not be listed as a bankruptcy asset unless it has been formally acted upon.

Plaintiff also contends she did not mislead the bankruptcy court because she gave a non-erroneous answer to question 20 which asked Plaintiff to declare all "Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims." Plaintiff contends her answer was truthful because at the time she submitted the answers to Schedule "B" she had no claims that were "contingent *and* unliquidated." The conjunctive emphasis is supplied in Plaintiff's opposition to Defendants' motion to dismiss, not in the text of question 20. See Doc. # 58 at 5:1.

In light of the foregoing discussion, the court must conclude Plaintiff's construction

of question 20 on Schedule "B" is both unreasonably strained and suspiciously self-serving. First, the wording of the question itself, which requires the petitioner to list " contingent and unliquidated claims of *every nature*" cautions against a reading of the question in the highly restricted sense proposed by Plaintiff. The obvious thrust of the question is to elicit a complete disclosure of all potential assets that could be marshaled to satisfy the bankruptcy estate's obligations. Further, the previously cited decisions in Hamilton, Hay, and Monroe County, clearly indicate that in order for question 20 of Schedule "B" to harmonize with the clear intent of governing case law, the word "and" in question 20 must be understood as being disjunctive so that the petitioner is directed to list all contingent claims *and* all unliquidated claims. Any more restrictive interpretation would be clearly contrary to controlling case law.

The court finds Plaintiff had a duty to report her claims against Beverly, Tristan and McCollough to the bankruptcy court and that she failed to do so. The court concludes that absent countervailing equitable considerations, the doctrine of equitable estoppel applies in this case to prevent Plaintiff from advancing her claims against Defendants because she failed to timely or adequately disclose those claims to the bankruptcy court.

Plaintiff contends that, notwithstanding any breach of duty to list her potential claims against Defendants in her statements to the bankruptcy court, the doctrine of judicial estoppel should not be applied in her case because her responses to the bankruptcy court did not constitute intentional misrepresentations. In this regard Plaintiff avers she had no intention to mislead, that she was reasonably unaware that she had any claims that would require disclosure on the bankruptcy court's schedules and that she made efforts to correct the mistake when it was discovered.

Plaintiff presents no support for the implied contention that application of judicial estoppel requires a finding of a particular subjective intent. The three categories of inquiry as set forth above are (1) whether Plaintiff has made inconsistent representations; (2) whether a

court accepted the previous representation; and (3) whether Plaintiff would benefit unfairly as a result of making the current inconsistent representation. Hamilton, 270 F.3d at 783 . Here, there was a representation to the Bankruptcy court that Plaintiff had no potential claims and an inconsistent representation to this court that she does have claims against Defendants. It is undisputed that the bankruptcy court accepted the prior inconsistent claim and discharged her debts in recognition of the absence of any assets. Finally, it is clear that Plaintiff does benefit unfairly from the inconsistent positions because the discharge of her debts pursuant to her earlier representation means she is not obliged to use the proceeds of her action against Defendants, if any, to satisfy the debts of the bankruptcy estate.

Whether Plaintiff's intentions were innocent when she made the representation to the bankruptcy court that she had no potential claims does not directly enter into the determination of whether judicial estoppel applies. If evidence existed that Plaintiff had, in fact, attempted in good faith to inform both the creditors and the bankruptcy court that Plaintiff had pending claims, then a case could be made there was a good faith attempt to adequately disclose the existence of the claims against Defendants. See Froshiesar, 2004 WL 2360529 at *8 (judicial estoppel not applicable where plaintiff's good faith efforts during bankruptcy proceeding is sufficient to constitute notice-in-fact of existence of claims). No such evidence of affirmative efforts to notify the bankruptcy court of the existence of the claims *prior to discharge of Plaintiff's debts* is in evidence in the present case.

It is also irrelevant that Plaintiff has, or has attempted to, reopen her bankruptcy proceeding. There is no authority that such actions, occurring after the discharge of the Plaintiff's debts, excuses the debtor's failure to timely declare all interests of the bankruptcy estate. It is important to note, however, that this court's determination that judicial estoppel operates in this case to prevent Plaintiff from advancing her claims on her own behalf does not necessarily mean that an appointed trustee of the bankruptcy estate may not advance claims belonging to Plaintiff for the benefit of the bankruptcy estate. See Bartley-Williams v.

Kendall, 134 Wash.App. 95, 99-100 (Wash.App. 2006) (differentiating holdings in Hamilton and related cases where the bankrupt sought to maintain a suit for their own benefit instead of the benefit of the bankruptcy estate).

Finally, it is worth noting that, despite Plaintiff's protestations of innocent intent, even if subjective intent were a factor in the application of judicial estoppel, there is no evidence in the present case of innocent intent. Plaintiff's self-serving declaration notwithstanding, Plaintiff has followed precisely the course of conduct she would have followed had she desired to conceal her potential claim from the bankruptcy court so as to secure the benefit of any settlement or judgment for herself without need to use the proceeds to pay her debts. While the court does not impute any malfeasance to Plaintiff, the court notes that it is not part of Defendants' burden to show that Plaintiff was ill-intentioned. Plaintiff, for her part, cannot show that she was not ill-intentioned.

The court has considered of each of the factors set forth in Hamilton and concludes that the doctrine of judicial estoppel applies in this case to prevent Plaintiff from advancing any claims against Defendants that accrued or were potential claims at the time Plaintiff's bankruptcy action was commenced.

THEREFORE, it is hereby ordered that Defendants' motion to dismiss is GRANTED as to the entirety of Plaintiff's complaint. The Complaint is therefore dismissed in its entirety. The dismissal is with prejudice as to Plaintiff. The Clerk of the Court shall CLOSE the CASE. Because Plaintiff's complaint is dismissed in its entirety, Defendants' motion to strike Plaintiff's jury demand is DENIED as moot.

IT IS SO ORDERED.

**Dated: December 7, 2006** **/s/ Anthony W. Ishii**
0m8i78 UNITED STATES DISTRICT JUDGE